# 98 DTA 183

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL IV AGUADILLA Y MAYAGUEZ

ALEJO SELLA MENDEZ CONOCIDO TAMBIEN POR ALEJANDRO SELLA MENDEZ, COMO APODERADO DE DOÑA IDA VELEZ MENDEZ, DON GETULIO ECHEANDIA VELEZ Y DOÑA CONSUELO ECHEANDIA VELEZ
Demandantes-Apelados

v.

PRIMA CULEBRINAS CORPORATION, INC.;
ALEJANDRO CHARNECO ET AL.
Demandados-Apelantes

---------------------------------------

ALEJO SELLA MENDEZ CONOCIDO TAMBIEN POR ALEJANDRO SELLA MENDEZ, COMO APODERADO DE DOÑA IDA VELEZ MENDEZ, DON GETULIO ECHEANDIA VELEZ Y DOÑA CONSUELO ECHEANDIA VELEZ
Demandantes-Apelados

v.

PRIMA CULEBRINAS CORPORATION, INC.; ALEJANDRO CHARNECO ET AL.
Demandados-Apelantes

Núms. KLAN-97-01317/KLAN-97-01326

San Juan, Puerto Rico, a 24 de abril de 1998

Panel integrado por su Presidente, Juez Rossy García
y los Jueces Martínez Torres y Soler Aquino

Rossy García, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Los recursos consolidados de epígrafe interesan la revisión y revocación de una 'Sentencia Parcial' emitida sumariamente el 10 de octubre de 1997 por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (Ramón E. Febus Bernardini, J.). Mediante ésta, dicho foro declaró CON LUGAR la moción que a tales efectos sometieran los co-demandantes-apelados, ■ miembros de la sucesión Echeandía Font y, acogiendo con aprobación los planteamientos de los demandantes promoventes, declaró nulos los acuerdos alcanzados por el Consejo de Familia del Fideicomiso Echeandía Font en la tercera reunión celebrada por éste en la que dicho consejo aprobó la creación de la Corporación Sucesión Echeandía Font Incorporada, los que quedaron consignados en el Acta de la Tercera Reunión del Consejo de Familia; declaró la nulidad de la Escritura Ciento Once que sobre Permuta de Bienes de Igual Valor fuera otorgada ante el co-demandado Jesús Ramírez Rivera (Lcdo. Ramírez) el 15 de diciembre de 1984, ■ mediante la cual el también co-demandado Alejandro Charneco (Sr. Charneco) --actuando como fiduciario sustituto del aludido Fideicomiso-- realizó dicho negocio jurídico con la corporación así creada; y resolvió que la participación en la finca objeto de controversia de la estirpe de don Pedro Agustín Getulio Echeandía Font --de la cual forman parte dichos co-demandantes-- correspondía a un 45.19%, ello en contraposición al 36% adjudicado en forma de acciones de la Sucesión Echeandía Font Incorporada que advino dueña de dicho inmueble. ■

En consecuencia, la sala sentenciadora ordenó al Sr. Charneco otorgar una escritura pública adjudicando a favor de la estirpe de don Pedro Agustín Getulio Echeandía Font una participación de 45.19% en la finca número 1,170 inscrita en el Registro de la Propiedad de Aguadilla, sección de San Sebastián, ello en satisfacción de su haber en los bienes que integraban el corpus de dicho fideicomiso. Al así dictaminar en cuanto a este extremo dispuso, además, que el restante 54.81% de la referida finca *"se inscribirá"* a favor de Rosalina, Wigberto y Osvaldo, éstos de apellidos Brau Echeandía; Narcisa, Sara María y Cecilia, éstos de apellidos Rabell Echeandía; John Frances y Aura, éstos de apellidos Echeandía Botari; y del Lcdo. Juan Jesús Ramírez Rivera, *"para que ellos se repartan sus porciones de acuerdo a los derechos que se reconocen y adjudican en el acta de la tercera reunión del Consejo de Familia."* ■ Acogió también las alegaciones y súplica de los demandantes a los efectos de que la parte demandada había procedido con temeridad, imponiéndoles, además, las costas del proceso más la cantidad de $3,000.00 por honorarios de abogado. ■

De otra parte, ordenó y dispuso el foro apelado la celebración de una vista evidenciaria *"para adjudicar responsabilidades a los demandados por los daños causados a los demandantes por la dilación indebida en entregarle su participación hereditaria y para establecer la cuantía de esos daños ".* ■

Notificado como fue dicho dictamen e inconforme con el mismo, el co-demandado Sr. Charneco presentó una moción solicitando determinaciones adicionales de hechos, la que fue denegada por el foro de instancia mediante resolución que fue notificada el 6 de noviembre de 1997. ■ A tenor, con fecha de 4 de diciembre de 1997 dicha parte interpuso ante nos en tiempo oportuno el recurso de apelación Núm. KLAN-97-01317, trámite por el que de igual forma optara el co-demandado Lcdo. Ramírez con el recurso Núm. KLAN-97-01326 que fuera presentado en la secretaría de este foro el subsiguiente 8 de diciembre, último día hábil para así proceder.

No obstante el desarrollo de las incidencias procesales antes reseñadas y de haber sido puesto en conocimiento de los recursos de apelación instados en atención a la naturaleza y alcance del dictamen emitido -sentencia parcial cuya certificación cumplió con las exigencias de la Regla 43.5 de Procedimiento Civil, *supra*, convirtiéndose tal dictamen en uno final y apelable- el tribunal de instancia se negó a detener los procedimientos. Al respecto, y según surge de la Minuta que recogiera las incidencias de la vista celebrada el 4 de diciembre, fecha en que se presentó uno de los referidos recursos de apelación ante esta curia, el tribunal *a quo* se reafirmó en *"[q]ue hasta que el Tribunal Apelativo no paralice los procedimientos, los mismos continúan aquí".* ■ Procedió así a reseñalar la conferencia con antelación al juicio para el 23 de febrero de 1998, ordenándole a las representaciones legales de las partes que, a tales efectos, se reunieran previamente el día 15 de ese mismo mes en cuya ocasión debían redactar el respectivo informe.

Enfrentados a tales circunstancias, los ahora demandados-apelantes promovieron ante nos mociones independientes de carácter urgente en auxilio de nuestra jurisdicción en las que trajeron a nuestra atención lo acontecido en la referida vista del 4 de diciembre. A tenor, solicitaron como remedio, entre otros, que se ordenara la paralización de los procedimientos ante el foro de instancia. Solicitaron, además, la consolidación de los recursos por ellos interpuestos, por interesar ambos la revisión judicial de un mismo dictamen. Ello dio base a nuestra resolución de 8 de enero de 1998. Mediante ésta, ordenamos la consolidación de los recursos de epígrafe hasta su final adjudicación, dejamos sin efecto el señalamiento de la vista que estaba pautada para el 23 de febrero y ordenamos la paralización de los procedimientos ante el tribunal de instancia hasta posterior determinación.

Retomando nuevamente los recursos de apelación impuestos, cuestionan los apelantes la autoridad del foro apelado para anular las disposiciones de una sentencia dictada con jurisdicción en el 1984. Mediante ésta, el extinto Tribunal Superior de Puerto Rico, Sala de Aguadilla, impartió su aval al Fideicomiso Echeandía Font y al consejo de familia allí constituido como cuerpo con autoridad para implementar la condiciones e intenciones del fideicomitente. Impugnan los apelantes, además, la determinación del foro de instancia declarando nulos los acuerdos alcanzados en la tercera reunión del Consejo de Familia. Por su parte, el co-demandado-apelante, Sr. Charneco, refuta la imposición de responsabilidad y la concomitante procedencia de resarcir *"por los daños causados a los demandantes por la dilación indebida para entregarle su participación hereditaria, [ello sin que] se presentara prueba documental alguna en la Moción Solicitando Sentencia Sumaria de actuación alguna negligente, torticera, intencional y/o [sic] dolosa cometida por el señor Charneco Méndez [y en ausencia, además, de] alegación alguna a tales efectos".* Objetó, por tanto, la utilización del mecanismo procesal de sentencia sumaria para dilucidar dicho extremo. Finalmente, los apelantes señalan que incidió el tribunal a quo "al imponer[les] el pago de Honorarios de Abogado en clara ausencia de temeridad ".

Habiendo sometido los demandantes-apelantes su alegato en oposición, y encontrándonos en condición de dictaminar luego de un cuidadoso análisis de los escritos presentados por las partes, la totalidad de los documentos que se hicieron formar parte de los autos y el derecho aplicable, resolvemos que resulta procedente emitir sentencia revocatoria de la apelada.

Para colocar los recursos que nos ocupan y los aspectos de derecho que penden ante nuestra consideración en correcta perspectiva, veamos inicialmente el trasfondo fáctico y procesal dentro del cual se gestó el dictamen que es objeto de impugnación.

Según surge de los autos, los hechos que originan la controversia a que se contrae el recurso que nos ocupa se remontan a principios de este siglo, en ocasión de que don Cecilio Dámaso Echeandía (don Cecilio) y doña María Rosalía Marciana Font y Feliú (doña María Rosalía) otorgaran la Escritura Núm. 76 sobre Compraventa de fecha 9 de octubre de 1921, mediante la cual le traspasaron un sinnúmero de propiedades a su hijo, Pedro Antonio Echeandía Font (Pedro Antonio). [9] Con posterioridad, y según se hizo constar en otros documentos públicos, Pedro Antonio adquirió otras propiedades con dineros provenientes de sus padres, bienes que recibió y poseyo en fideicomiso, sujeto a las siguientes cláusulas y condiciones que fueron estipuladas.

## *"CONSTITUCION DE[L] FIDEICOMISO*

*Que el Fiduciario [Pedro Antonio] retendría, disfrutaría y utilizaría a su discreción, mientras él viviera, de todos los bienes recibidos en Fideicomiso, pudiendo, si así lo deseara, distribuir de sus beneficios y del capital, de tiempo en tiempo, en la forma que creyera, pudiendo retener para él cualquier parte de los beneficios. Este Fideicomiso sería constituido para beneficio de Don Cecilio Dámaso Echeandía, Doña María Rosalía Marciana Font Feliú, para los descendientes de ambos, para doña María de los Angeles Echeandía, y para los descendientes de doña María de los Angeles Echeandía; pudiendo traspasar los bienes que él creyera menester de tiempo en tiempo, a las personas que él creyera necesario en pago de sus haberes en el Fideicomiso.*

## *DISOLUCION DEL FIDEICOMISO Y FORMA DE PAGO DE HABERES*

*Una vez muerto Don Pedro Antonio Echeandía Font y dentro de un límite que no excediera de*

*cinco (5) años después de su muerte, se reuniría el consejo de familia, presidiendo el mismo el hijo varón de más edad sobreviviente de Don Cecilio Dámaso Echeandía y Doña María Rosalía Marciana Font Feliú. En el evento de que no existiera un hijo varón, presidiría el consejo de familia la hija mayor y en el evento de que no existieran ninguno de éstos, los descendientes de don Cecilio Dámaso Echeandía y Doña María Rosalía Marciana Font Feliú elegirían un presidente y un secretario, votando en la forma que más adelante se instituye. Este consejo de familia reunido implementaría las condiciones e intenciones de don Cecilio Dámaso Echeandía y Doña María Rosalía Marciana Font Feliú y transmitiría esta donación en Fideicomiso dejada en suspenso hasta la liquidación de la misma a los descendientes vivos al momento de la liquidación del Fideicomiso. Don Cecilio Dámaso Echeandía y Doña María Rosalía Marciana Font Feliú, mediante testamento escrito u ológrafo, podrían establecer la forma y manera en que se repartirían los bienes entregados en Fideicomiso, teniendo cada uno de ellos que disponer del cincuenta por ciento (50%) del corpus del Fideicomiso. En el evento de que no testaran se dividiría conforme a lo que el fiduciario estableciera y de no establecerlo el fiduciario, se dividiría conforme a lo que establece el Codigo Civil del año mil novecientos cuatro (1904) vigente en el año mil novecientos veintiuno (1921); pero siempre heredando los descendientes conforme y de acuerdo a sus estirpes.*

## FORMA Y MANERA DE TOMAR DECISIONES

*Se tomaran los acuerdos de vender, ceder, traspasar, permutar inmuebles en su totalidad o en común y proindiviso, cuyo precio podrá estar representado por dinero en efectivo, pagarés simples o hipotecarios, promesas de pago, giros a la orden o al portador, cualesquiera otros documentos públicos o privados necesarios o convenientes relacionados con los bienes, en reuniones convocadas al efecto donde comparecerán por sí o través de mandatarios el setenta y cinco (75%) por ciento de las participaciones dejadas, ya sea por testamento, por vía intestada o instituidos por el fiduciario de los beneficiarios al momento de la reunión; atribuyéndosele el cincuenta por ciento (50%) a los descendientes con derecho a herencia de doña María Rosalía Marciana Font Felíu. Si en las votaciones llevadas al efecto, el sesenta por ciento (60%) de las participaciones votaran en conjunto, se aprobarán las resoluciones, siendo dichos acuerdos en tales casos obligatorios para todos los miembros del Fideicomiso y sus herederos, sucesores, causahabientes o cesionarios, por ser esta regla adoptada con el carácter de pacto particional y de naturaleza irrevocable y mandatorio para todos los beneficiarios de este fideicomiso. El Tribunal Superior de Puerto Rico, Sala de Aguadilla, tendrá autoridad para, a solicitud y en cumplimiento específico por cualquiera de las demás partes interesadas, ordenar al Alguacil, cualquiera que ésta sea, a firmar por la parte que no lo hiciere voluntariamente o estuviere impedida de hacerlo".* ■

Con este trasfondo, y sin que trascienda del expediente ante nos la ocurrencia de algún otro suceso relacionado a los bienes así fideicomitidos, el 18 de marzo de 1977 -fallecidos don Cecilio y doña María Rosalía- varios de los beneficiarios del susodicho fideicomiso entablaron un pleito civil ante el extinto Tribunal Superior de Puerto Rico, Sala de Aguadilla, el cual denominaron 'División de comunidad de bienes'. Se hizo allí constar que todas las partes indispensables fueron debidamente emplazadas -ya fuera por emplazamientos personales o por edictos- y que, en esencia, los así demandados que contestaron la demanda solicitaron igual remedio que la parte demandante. ■ Como parte del proceso, mediante resolución y orden de 21 de abril de 1978, dicho foro nombró al Sr. Charneco como tasador y subsiguientemente, el 27 de octubre de 1981, lo designó como administrador judicial de los bienes dejados por don Cecilio y doña María Rosalía.

*Según surge de la sentencia que eventualmente se dictara en dicho pleito, durante la celebración de conferencias de status las partes intercambiaron teorías sin que éstas pudieran llegar a ningún acuerdo. No fue sino hasta que Juan Francisco Echeandía Font (Juan Francisco) -único hijo sobreviviente de don Cecilio y doña María Rosalía- convocara a una reunión, que se confeccionó un documento de 'Estipulación de hechos'. En su virtud, el tribunal interpelado procedió a resolver la contienda tomando también en consideración la prueba testifical, interpretó los mismos y procedió a su implementación "según solicitado por las partes de común acuerdo en este caso ". Asimismo procedió, "visto el allanamiento de las partes interesadas, la prueba testifical y la prueba documental...al cumplimiento específico e implementación de todo cuanto se expuso y de todo lo que se ofreció en evidencia en este caso, los cuales fueron admitidos sin objeción alguna por las partes."* ■

El resultado alcanzado por dicho foro quedó plasmado en la sentencia que emitiera el 8 de julio de 1982 consignándose, como parte de la misma, que ésta advendría final y firme treinta (30) días después de ser publicada en un periódico de circulación general. █

En un muy bien estructurado dictamen disponiendo de la controversia ante su consideración en el referido Caso Núm. TS-77-853, el tribunal de instancia determinó, como cuestión de hecho, que el matrimonio Echeandía-Font había dispuesto la constitución del fideicomiso al que se ha hecho referencia, con sus términos y condiciones según fuera transcrito anteriormente en esta sentencia. Asimismo enumeró e identificó los bienes que en el momento formaban el *corpus* del fideicomiso, entre los cuales describió la finca que forma parte de la actual controversia. █ De otra parte, luego de dilucidar la composición y el por ciento de participación de las estirpes de don Cecilio y doña María Rosalía beneficiarias de los bienes del fideicomiso por éstos constituido, █ y de constatar que en la referida reunión citada por Juan Francisco se obtuvo la presencia mínima requerida y el consenso estipulado por sus términos para lograr acuerdos ejecutables, el tribunal le impartió su aprobación a aquellos que fueron alcanzados en esa primera reunión del Consejo de Familia que se celebrara el día 6 de junio de 1982. Implícito quedó que los beneficiarios de dicho fideicomiso (demandantes y demandados, o sea, todos los que de una u otra forma fueron partes en dicho pleito) quedaron vinculados en dicha ocasión por lo allí dispuesto, o sea, que siempre que el sesenta por ciento (60%) de las participaciones dejadas en el fideicomiso votaran en conjunto en una reunión donde estuviera presente por lo menos el setenta y cinco por ciento (75%) de tales participaciones, el consejo podría adoptar acuerdos y resoluciones *"mandatorias al Fideicomiso y, por ende, a su Fiduciario",* para procurar su disolución y eventual pago de sus respectivos haberes en el mismo. █

Consecuencia de lo antes expuesto, y como parte de unas conclusiones mixtas de hechos y de derecho, el tribunal observó que, si bien el Código Civil de 1902, vigente al 1921 -fecha de constitución del fideicomiso Echeandía Font no contemplaba los fideicomisos, *"el mismo no los autorizaba pero tampoco los prohib[ía]",* █ A tenor, y en lo pertinente, luego de concluir, como cuestión de derecho, que de acuerdo a las disposiciones del artículo 7 del Código Civil de 1930, *"[e]l tribunal que rehuse fallar a pretexto de silencio, obscuridad, o insuficiencia de la ley, incurrirá en responsabilidad [por lo que] [c]uando no haya ley aplicable al caso, el tribunal resolverá conforme a equidad, que quiere decir que se tendrá en cuenta la razón natural de acuerdo con los principios generales del derecho, y los usos y costumbres aceptados y establecidos",* 31 L.P.R.A. sec. 7, y que *"[s]on nulos los actos ejecutados contra lo dispuesto en la ley, salvo los casos en que la misma ley ordene su validez [no obstante lo cual [l]os derechos concedidos por las leyes son renunciables, a no ser esta renuncia contra la ley, el interés o el orden público, o en perjuicio de tercero ",* Art. 4, 31 L.P.R.A. sec. 4. El foro allí interpelado le reconoció al Consejo de Familia, éste según concebido por el matrimonio Echeandía Font, la autoridad que le impartiera dicho fideicomitente para lograr sus propósitos. En su virtud, y en lo que nos concierne, en la parte dispositiva de su sentencia ordenó:

*"1. Al Consejo de Familia, compuesto por la estirpe de don Juan Francisco Echeandía Font, la estirpe de don Cecilio Nicolás Echeandía Font, la estirpe de don Pedro Agustín Getulio Echeandía Font, la estirpe de doña María de los Angeles Echeandía Font [sic].█ la estirpe de doña Justa Felicidad Echeandía Font, la estirpe de don Pedro Antonio Echeandía Font, la estirpe de doña María Teresa Echeandía Font, la estirpe de doña Juana E. Marciana Echeandía Font, la estirpe de doña Sara María Cristeta Echeandía Font, y la estirpe de don Luis Felipe Iturrino Echeandía; que nombre un Fiduciario sustituto.*

............

*6. En cumplimiento del Fideicomiso establecido por don Cecilio Dámaso Echeandía Vélez y doña María Rosalía Marciana Font y Feliú, que se reúna el Consejo de Familia y proceda a confeccionar la partición y entrega de los bienes, conforme a lo establecido, en ó antes del día 16 de diciembre de 1984, pudiéndose hacer la misma mediante particiones parciales o en una partición total. Esta partición será aprobada en reuniones donde estén presentes, por lo menos, el 75% de las participaciones hereditarias y con la aprobación del 60% de dichas participaciones. El Tribunal Superior, Sala de Aguadilla, tendrá autoridad para, a solicitud y en cumplimiento específico por cualquiera de las demás partes interesadas, ordenar al Alguacil, cualquiera que éste sea, a firmar por la parte que no lo hiciese voluntariamente o estuviere impedida para hacerlo."*

De otra parte, requirió

"4. *Al Administrador Judicial, don Alejandro Charneco, proceda a promover la Declaratoria de Herederos de don Pedro Agustín Getulio Echeandía Font [padre de los co-demandantes y de varios de los co-demandados en el caso ante nuestra consideración].*

*5. Al Registrador de la Propiedad, Sección correspondiente, que inscriba la posesión y dominio a nombre del Fiduciario del Fideicomiso de don Cecilio Dámaso Echeandía Vélez y doña María Rosalía Marciana Font y Felíu las siguientes propiedades, con exclusión de cualquier o cualesquiera otros titulares:*

*(A) ---RUSTICA: Radicada en los barrios Bahomamey y Piedras Blancas del municipio de San Sebastián, compuesta de Ciento Nueve Cuerdas con Ochenta y Nueve centimos, equivalentes a cuarenta y cuatro hectáreas. diecinueve áreas, doce centiáreas y cuatro hectáreas, diecinueve áreas. doce centiáreas, de terreno, cruzada por la carretera insular que va de San Sebastián a Camuy, con las siguientes colindancias: por el Norte, Pedro Antonio Echeandía, antes Cecilio Echeandía Vélez y las paredes o murallas de la sierra; por el Sur, Genaro Rodón, Alcides Feliciano, antes Marcelino Ríos, y municipio, Sucesión Ballester, hoy Roque Vélez, Pascasio Torres, antes Buenaventura Vargas y Abraham Martir, separado por un caño, Julio O. Abril, y Fernando Traverso, hoy José Cristino Pérez; por el Este, Roque Traverso con una quebrada, antes, hoy Julio Abril, y hoy José Cristino Pérez. Atanasio Pérez, antes María Pérez, y José María Pérez, hoy Pedro Echeandía Font, Roque Vélez, antes Isidro Ríos y antes Manuel Pérez; y por el Oeste, Cecilio Echeandía Vélez, antes, hoy, Pedro Echeandía Font, María Belén Torres, Pascasio Moreno y Maximino Esteves, y el mismo Pedro Echeandía Font. Conteniendo dos casas en los medianeros y una casilla de mampostería.*

*De esta finca se ha segregado una porción de terreno de cuarenta y dos milésimas de una cuerda, vendidas al Pueblo de Puerto Rico.*

*Inscrita al folio 241, del tomo 77 de San Sebastián, finca número 4328, inscripción 1ra.*

*(B)...*

*(C) RUSTICA: Predio sita en el Barrio Piedras Blancas del término municipal de San Sebastián compuesta de veinte y nueve cuerdas setenta céntimos, equivalentes a once hectáreas sesenta y siete áreas y una centiáreas de terreno conteniendo una casa habitación de dos pisos de tres por una varas de madera con techo de tejas de barro y hierro galvanizado con un colgadizo de seis y media por tres varas y una cocina de nueve por seis y una casa para máquina de trece y media por trece varas de madera con techo de hierro galvanizado, tanque para lavar café, aljibe, malacate y máquina para descascarar café y accesorio, un glasis secadero de grano de treinta y cuatro por diez y siete y media varas con un tanque de hierro de tres cuartos por dos tres cuartas varas, una casa o rancho de madera con techo de hierro galvanizado de diez por diez varas con tahona para pilar café y su ventilador; en lindes, por el norte y oeste con el camino de Guajataca; Este con don Cecilio Echeandía antes don Pedro Echeandía, Manuel Curt, José María Pérez, La Sociedad M.J. y L. Cabrero, antes el propio Pérez, don Antajerjes Cebollero, y al Sur, el mismo Sr. Cebollero.*

*---Es segregación de la finca número mil ciento setenta y nueve, obrante al folio dieciseis de este mismo tomo, inscripción primera; y como tal segregación que es de dicha finca no aparece de este número conocidamente afecto a carga alguna.*

*............10. Al Fiduciario del Fideicomiso de Don Cecilio Dámaso Echeandía Vélez y doña María Rosalía Marciana Font y Felíu, que pague el haber en todo este Fideicomiso a la estirpe de Don Pedro Antonio Echeandía Font, doña Ernestina Echeandía Méndez, entregándole 2.51 cuerdas, más o menos, que constituye la parcela XBX, en el plano confeccionado por el Ing. Antonio Hernández Virella, el día 9 de abril de 1980, que es lo que quedaría después de deducido el terreno que se le vendiera al Sr. Francisco Ríos renunciando así, doña Ernestina Echeandía Méndez, a todos los derechos y beneficios que tuviere este Fideicomiso, quedando de esta forma pagado su haber a esta estirpe. El remanente de la finca 1207, inscrita al folio 100 del tomo 45, quedará a favor del Fiduciario del Fideicomiso de Don Cecilio Dámaso Echeandía Vélez y doña María Rosalía Marciana*

*Font y Feliú.* ■

*11. A publicar esta Sentencia en su parte dispositiva en un periódico de circulación general."*

Finalmente, la sala sentenciadora en el Caso Núm. TS77-853 sobre 'División de Comunidad de Bienes,' dictaminó que *"[e]sta Sentencia no será final y firme hasta tanto hayan transcurrido treinta (30) días después de su publicación en un periódico de circulación general".* ■

Así las cosas, y en cumplimiento de lo ordenado por la parte dispositiva de la reseñada sentencia, el Consejo de Familia Echeandía Font (el Consejo) celebró una segunda reunión el 13 de marzo de 1983, cuyas incidencias fueron recogidas en un Acta que fuera elevada a escritura pública. ■ Según surge de ésta --luego de consignarse que en dicha reunión estuvieron presentes las participaciones requeridas para validar los acuerdos que unánimemente allí se tomaron-- el Consejo decidió, en lo que nos resulta pertinente, nombrar al Sr. Charneco como Fiduciario sustituto; satisfacer totalmente su haber en el Fideicomiso a la estirpe de don Pedro Antonio y María Teresa Echeandía Font, así como a la de María de los Angeles Echeandía Santana; ■ pagar parcialmente los haberes de las estirpes de Justa Felicidad, Sara María Cristeta y Juan Francisco Echeandía Font; ■ y compensar al Fiduciario, Sr. Charneco, con el tres por ciento (3%) del valor de los bienes fideicomitidos por el desempeño de sus labores realizadas y por realizar. De otra parte, el Consejo se comprometió a pagar al Lcdo. Ramírez, abogado de dicho cuerpo, *"el diez (10%) [sic] del valor de los haberes ".* ■

Anticipando la fecha en que el Consejo debía dar cumplimiento final al Fideicomiso establecido por don Cecilio y doña María Rosalía, ello de conformidad con los términos de la sentencia dictada en el caso Núm. TS-77-853 que ordenó al consejo a *"que se reúna.. y proceda a confeccionar la partición y entrega de los bienes...en o antes del día 16 de diciembre de 1984",* ■ el Consejo celebró una tercera reunión los días 1ro. y 2do. de diciembre de 1984, cuyas incidencias fueron recogidas en un acta que fuera notarizada por el Lcdo. Ramírez. A tenor, y luego de hacerse constar que había *"presentes en la reunión un interés igual al 79.56823% de las participaciones en el referido Fideicomiso y por tanto hay quórum suficiente",* dicha acta indica que el Consejo adoptó por unanimidad, luego de llevarse a cabo la votación, los siguientes acuerdos, entre otros: que el presidente y la secretaria del Consejo, junto con el Fiduciario sustituto, Sr. Charneco, suscribieran los artículos de incorporación de una corporación que llevaría el nombre de Sucesión Echeandía Font Incorporado; que a dicha corporación se le traspasara la finca conocida como *"finca banco"* a cambio de 2,978 acciones que serían la totalidad de las acciones a emitirse; y que tales acciones fueran emitidas a nombre del Fiduciario, Sr. Charneco, quien, a su vez, las traspasaría a los beneficiarios del Fideicomiso, adjudicándose los de éstas al Lcdo. Ramírez en pago de sus servicios, según pactado en la segunda reunión celebrada por el Consejo. A tenor, y en lo que nos concierne, a la estirpe de don Pedro Agustín Getulio Echeandía Font --aquí demandantes y co-demandados-- se le adjudicaron 1,077 acciones en pago de su haber en los bienes del Fideicomiso, así como su correspondiente participación en unos dineros adicional es que constaban en los haberes del Fideicomiso. ■

Según surge de los autos ante nos, el 15 de diciembre de 1984, la Sra. Narcisa Rabell Echeandía y el Sr. Oswaldo Brau Echeandía, Secretaria y Presidente, respectivamente, del Consejo, suscribieron el acta de la tercera reunión del mismo *"para que se deje auténtica constancia de lo [allí] ocurrido",* documento que notarizó el Lcdo. Ramírez. En esa misma fecha, y en cumplimiento de los acuerdos adoptados, los mencionados miembros del Consejo, en unión al Sr. Charneco, firmaron el Certificado de Incorporación de 'Sucesión Echeandía Font Incorporado', asimismo notarizado por el Lcdo. Ramírez. De igual forma, ese mismo día la Sra. Rabell Echeandía, actuando como agente especial de la corporación, y el Sr. Charneco, como fiduciario sustituto y titular de la denominada 'finca banco', comparecieron ante el Lcdo. Ramírez para otorgar la Escritura Núm. Ciento Once sobre 'Permuta de Bienes de Igual Valor', mediante la cual la Corporación Sucesión Echeandía Font Inc. advino dueña del referido inmueble, y el Sr. Charneco titular de la totalidad de sus acciones emitidas. A tenor, y según acordado en la tercera reunión del Consejo, ese mismo día 15 de diciembre de 1984 el Sr. Charneco traspasó 1,077 acciones a nombre de la estirpe de don Pedro Agustín Getulio Echeandía Font, número de acciones que el Consejo entendió como equivalentes al haber de dicha estirpe en los derechos del Fideicomiso Echeandía Font luego de ajustarla en atención a los gastos correspondientes a que se ha hecho referencia. Finalmente, en cumplimiento de sus deberes como fiduciario sustituto, el Sr. Charneco procedió a consignar dicho certificado de acciones en la Secretaría del extinto Tribunal

Superior de Puerto Rico, Sala de Aguadilla, como parte del expediente del Caso Núm. TS-77-853, poniéndolo así a la disposición de los miembros de la referida estirpe.

Es con este trasfondo que con fecha de 10 de agosto de 1994, dos de los miembros de la estirpe de don Pedro Agustín Getulio Echeandía Font, Getulio y Consuelo Echeandía Vélez, ▄ a través de su apoderado señor Alejo Sella Méndez (Sr. Sella), instaron la acción del caso de epígrafe en la que, en esencia, alegaron que los miembros de dicha estirpe eran dueños en condominio de la finca objeto de controversia, ▄ y que la misma les había sido adjudicada a virtud de las disposiciones de la sentencia dictada el 8 de julio de 1984 por el Tribunal Superior de Aguadilla en el referido caso TS-77-853. Ello no obstante, de otra parte adujeron que el susodicho inmueble -de conformidad con los mismos términos de la referida sentencia- había sido inscrito a nombre del fiduciario del fideicomiso instituido por don Cecilio y doña María Rosalía; que los co-demandados, el Sr. Charneco y el Lcdo. Ramírez, se habían negado a traspasarle el pleno dominio de la finca a los miembros de dicha estirpe, manteniendo su *"posesión de facto...con todos sus usos, usufructos y privilegios"*; y que tal *"usurpación de [sus] derechos titulares"* alegadamente les había causado daños y perjuicios, por los cuales peticionaron ser indemnizados. ▄ A tenor, solicitaron del foro interpelado que declarara con lugar la demanda condenando a dichos co-demandados *"a transmitir el título y pleno dominio de la finca"* objeto de controversia y a resarcir a los miembros de la estirpe de don Pedro Agustín Getulio Echeandía Font, demandantes y co-demandados, la suma de un millón de dólares.

Notificados como fueron, los co-demandados -Sr. Charneco y Lcdo.Ramírez- procedieron a someter por separado su contestación a la demanda, en la que ambos concedieron la calidad de los demandantes como miembros de la estirpe de don Pedro Agustín y, a tenor, de beneficiarios del Fideicomiso Echeandía Font, así como que, por disposición de la sentencia dictada en el caso TS-77-853, se ordenó al Registrador de la Propiedad de Aguadilla a inscribir la propiedad objeto de controversia a nombre del Fiduciario del referido Fideicomiso. De otra parte, el Lcdo. Ramírez negó la alegación de los demandantes de que éstos fueran sus dueños en condominio y que la misma les hubiese sido adjudicada como resultado de la sentencia emitida en dicho caso. Finalmente, ambos negaron que se les hubiese requerido por parte del Sr. Sella, mandatario de los co-demandantes, traspasar el título de dicha propiedad a la estirpe de don Pedro Agustín y que tuvieran la posesión *de facto* de la misma por lo que, de igual forma, negaron responsabilidad alguna por los alegados daños y perjuicios por ésta reclamados. Como defensas afirmativas alegaron, entre otras, que la demandante dejó de exponer una reclamación que justificara la concesión de un remedio *"fuera del ya concedido en la Sentencia [que recayera en el caso TS-77-853]"*; que la acción incoada estaba prescrita; que el Sr. Charneco, por sí mismo, no tenía autoridad alguna para adjudicar ni partir bienes del fideicomiso Echeandía Font; que nunca había tenido la posesión física de la controvertida finca; que la estirpe de don Pedro Agustín Getulio Echeandía Font tenía emitidas a su nombre acciones en la Sucesión Echeandía Font Incorporada a cuyos efectos se emitió un certificado corporativo acreditando dicha titularidad (el que, según indicado, fue consignado en la Secretaría del Tribunal Superior de Aguadilla, hoy Tribunal de Primera Instancia, Sala Superior de Aguadilla, en el expediente del caso TS-77-853), y que sólo faltaba que los miembros de dicha estirpe acreditaran, a satisfacción de dicho foro, su cumplimiento con lo dispuesto en 13 L.P.R.A. 5436, ▄ para que le fuera entregado dicho certificado corporativo, lo que tales co-demandados alegaron que le fue requerido reiteradamente al Sr. Sella *"sin que éste hubiese actuado al respecto."* ▄

Trabada como quedó la controversia, y luego de una serie de incidentes procesales relacionados a la utilización de los mecanismos de prueba y de vistas señaladas para considerar y discutir el estado de los procedimientos, el tribunal de instancia, como resultado de la vista que celebrara el 14 de noviembre de 1996, ordenó a las partes que, tomando como punto de partida la sentencia dictada en el caso TS-77-853, sometieran éstas *"un inventario de qué es lo que entienden que se hizo, cuándo y quién lo hizo y..qué es lo que falta de hacer, a quién le corresponde hacerlo y porqué no lo ha hecho";* y que se expresaran sobre la validez del negocio jurídico de permuta, instruyendo específicamente a la parte demandante a ilustrar *"al tribunal de cómo es que ese negocio jurídico ha afectado los intereses y la participación y adjudicación en la herencia que les corresponde"* así como de sus alegaciones de nulidad acerca de la existencia corporativa de la Sucesión Echeandía Font Incorporada. ▄ En cumplimiento de lo ordenado, el 14 de diciembre de 1996 los demandantes comparecieron en autos con un escrito denominado 'Moción en cumplimiento de orden y solicitando que se dicte sentencia parcial sumariamente'. Según surge de dicho escrito, luego de exponer los

alegados hechos sobre los cuales, a su juicio, no existía controversia real sustancial, en función de éstos discutieron la alegada nulidad de los acuerdos alcanzados por el Consejo de Familia en su tercera reunión, fundando su contención en la falta de consentimiento por parte de los co-demandantes para llevar a cabo la permuta. Además, alegaron la nulidad de fondo y de forma de la Escritura Núm. Ciento Once en la que se concretara dicho negocio jurídico. Apoyaron tal contención en que la referida corporación carecía de personalidad jurídica para consentir toda vez que el certificado de incorporación de la misma fue presentado en el Departamento de Estado en una fecha posterior a la de las transacciones que llevara a cabo (la permuta y la emisión de acciones). Adujo así que la nulidad de dicho contrato sobrevenía tanto por falta de consentimiento (por la alegada 'inexistencia' de la corporación) como por la inexistencia de causa (una corporación inexistente no podía emitir acciones, lo que constituia la causa de la permuta). De otra parte, sostuvieron la alegada nulidad de forma de la escritura de permuta en que el documento del cual surgían los acuerdos sancionando dicha transacción contenía una cláusula a favor del notario que autenticó el mismo (Lcdo. Ramírez) -adjudicación de sus honorarios en forma de acciones de la susodicha corporación- lo que lo revestía de una nulidad total y radical que debía alcanzar a dicha escritura de permuta autorizada por el mismo Lcdo. Ramírez, *"aunque se haya usado el subterfugio de distribuir las acciones en un documento aparte"*. Sin hacer alusión a perjuicio alguno resultante de la actuación de los co-demandados al proceder conforme a lo acordado por el Consejo de Familia, o peticionar en su moción la concesión de indemnización alguna en daños y perjuicios, los demandantes finalizaron su escrito argumentando a favor de la procedencia de la sentencia sumaria parcial por ellos promovida. ■■

En ese estado de los procedimientos, el caso le fue asignado al juez aquí apelado quien señaló una vista para discutir los asuntos pendientes, entre los cuales se encontraba la referida moción de sentencia sumaria. Ello no obstante, éste optó por no permitir argumentaciones orales acerca de sus méritos ni en esa ocasión ni en una subsiguiente, celebrada el 2 de octubre de 1997, en cuyo momento se llevó a cabo la calendarización del caso, concediéndole a los aquí apelantes un término de viente (20) días para presentar una moción de sentencia sumaria a su favor. En su virtud, *"el Tribunal resolver[ía] por los escritos"*. ■■ Ahora bien, la parte co-demandada-apelante nunca tuvo oportunidad de proceder acorde con dicha directriz toda vez que con fecha de 10 de octubre, el tribunal de instancia dictó sentencia parcial acogiendo la moción promovida a tales efectos por los demandantes. Según ya indicado y por los fundamentos que pasamos a exponer, determinamos que el dictamen apelado no puede prevalecer.

## -II-
### -A-

De entrada se hace menester dejar claramente establecido la improcedencia del ataque colateral que hacen los demandantes-apelados al dictamen que fuera emitido por el tribunal de instancia en el caso TS-77-853 el 8 de julio de 1982, ello al cuestionar la validez de los acuerdos alcanzados por el Consejo de Familia en su tercera reunión. En cuanto a este extremo basta con señalar que dicha sentencia advino final y firme hace más de quince años, habiéndose determinado y declarado por virtud de la misma la autoridad del Consejo de Familia del Fideicomiso Echeandía Font para *"confeccionar la partición y entrega de los bienes, conforme a lo establecido [en dicho fideicomiso]"*, facultad que incluia *"vender, ceder, traspasar, [o] permutar inmuebles en su totalidad o en común y proindiviso..."*. Según indicado, dicha sentencia se convirtió en vinculante para todos los miembros beneficiarios del mismo treinta días después de que su parte dispositiva fuera publicada en un periódico de circulación general, lo que ocurrió el 30 de julio de 1982. ■■ Sus efectos, en cuanto a los aquí demandantes-apelados respecta, constituye y alcanza a una renuncia a su alegado derecho de prestar personalmente su consentimiento a las determinaciones que hacia esos fines tomó el referido Consejo de Familia. [36] Como bien reconociera el juzgador de hechos en el referido caso TS-77853 amparado en las disposiciones del Art. 4 del Código Civil, *supra, "[l]os derechos concedidos por las leyes son renunciables "*.

Resolvemos, en consecuencia, que la estirpe de don Pedro Agustín Getulio Echeandía Font no tenía que prestar su consentimiento para avalar la permuta de que fue objeto la finca en controversia y los acuerdos concomitantes, ello ante el hecho incontrovertido de que, según expuesto, los mismos fueron avalados por unanimidad en una reunión donde estuvo presente un 79% de las participaciones, sobrepasando el mínimo requerido de éstas, ello de conformidad con los términos del fideicomiso. De igual forma, es insostenible su argumentación a los efectos de que en dicha transacción de permuta no

medió un consentimiento válido y que, por ende, no está presente uno de los tres requisitos que deben concurrir para el perfeccionamiento de un contrato, siendo los otros dos elementos imprescindibles el objeto cierto sobre el cual se constituye el negocio y la causa de la obligación que establezcan las partes contratantes. Art. 1213, 31 L.P.R.A. sec. 3391. Sostenida la facultad del Consejo de Familia para realizar la permuta impugnada, carece de todo mérito el fundamento esgrimido por el tribunal *a quo* de que aquél *"tenía autoridad para repartir y adjudicar los bienes del caudal entre todos los herederos, mas el Consejo de Familia no tenía autoridad en ley para enajenar la propiedad adjudicada a los herederos a una corporación sin que ellos consintieran "*. ██ Dicho argumento pasa por alto totalmente que el acuerdo del Consejo no fue adjudicar la finca a la demandante en común proindiviso en pago de sus haberes en el fideicomiso, sino que dicho pago se llevó a cabo en forma de acciones equivalentes a su participación en la corporación dueña de la controvertida finca una vez ésta fue objeto de permuta entre el fiduciario sustituto, Sr. Charneco, titular de dicho inmueble, y la Sucesión Echeandía Font Incorporada, dueña de las acciones, para cuya transacción el Consejo estaba debidamente autorizado según los términos y condiciones del fideicomiso.

Atendida esta consideración de umbral, veamos ahora los demás planteamientos y señalamientos de error a que se contrae el recurso que nos ocupa.

### -B-

En su dictamen, el foro de instancia declaró la nulidad al negocio de permuta, contrato que, según indicado, se formalizó mediante escritura pública el 15 de diciembre de 1984. Fundamentó tal dictamen en la falta de consentimiento válido que pudo haber prestado *"la Sucesión Echeandía Font Incorporada [toda vez que ésta] no obtuvo la personalidad jurídica que le da capacidad para consentir en un contrato"*, ello según dispuesto en el Art. 24 del Código Civil, 31 L.P.R.A. sec. 24, condición que alegadamente no alcanzó *"hasta su fecha de incorporación el 29 de enero de 1985"*. ██ Perdió de perspectiva el foro de instancia al así dictaminar la existencia de la figura jurídica de la corporación *de facto*, así como el alcance legal de sus actuaciones, ficción que fuera creada e incorporada al derecho corporativo por vía jurisprudencial. A tal resultado nos conducen las circunstancias particulares del caso que nos ocupa y la realidad de que los hechos pertinentes acontecieron vigente en nuestra jurisdicción la anterior Ley General de Corporaciones, Ley Núm. 3 de 9 de enero de 1956, según enmendada, 14 L.P.R.A. sec. 1101 *et seq.* (1995) --estatuto que fuera derogado --por la actual ley, Ley Núm. 144 de 10 de agosto de 1995, 14 L.P.R.A. sec. 2601 *et seq.*, (Supl. 1997)-- ██ y bajo el cual el Tribunal Supremo de Puerto Rico reconoció la existencia de dicha figura en nuestro ordenamiento jurídico. Veamos.

Expresa Fletcher en su obra sobre corporaciones, que una corporación *de facto* es aquélla creada de manera tan defectuosa que no puede ser calificada como una corporación *de jure*, no obstante lo cual dicha entidad se considera como el resultado de un intento bona fide por parte de sus asociados de incorporarse al amparo de las disposiciones del estatuto que las autoriza, ello unido al ejercicio de los poderes corporativos que allí se le conceden y cuya existencia se reconoce por los tribunales, por consideraciones de política pública, en todo procedimiento en que se cuestione su existencia excepto cuando es el Estado mismo quien promueve dicho ataque a su existencia. Fletcher, 8 Fletcher Cyc. Corp., sec. 3761 (traducción nuestra). A tenor, nos indica dicho tratadista que, mientras exista, una corporación de facto es una realidad, poseyendo una existencia substancial y legal, y con una personalidad jurídica independiente, reconocida por ley como distinta y separada de la de sus miembros. Disfruta, con un limitado alcance, del status de ser una corporación de jure excepto, como se ha indicado, cuando es el Estado quien cuestiona su existencia como tal. *Id.*, sec. 3762.

En la única ocasión en que el Tribunal Supremo de Puerto Rico ha tenido la oportunidad de abordar dicha figura jurídica la que, según indicado, es de factura jurisprudencial, dicho alto foro expresó -refiriéndose a la situación particular del caso ante su consideración- que *"[p]ara que pueda considerarse a un grupo de personas como una 'corporación de facto' se necesita algo más que una mera expresión de que tienen el propósito de organizarse como una corporación "*. Cordero v. Supermercado San Juan, Inc., 103 D.P.R. 783, 786 (1975). ██ Citando a *Fletcher, supra*, sec. 3777 y a Ballantine, ██ señaló que era preciso que hubiese un cumplimiento sustancial con las disposiciones del estatuto que autoriza la existencia de las corporaciones y que se haya actuado como tal corporación, faltando sólo algunos de los requisitos que dicha ley exige. Ahora bien, no obstante añadir que sería necesario que tal 'corporación' hubiese otorgado y radicado el certificado de

incorporación para adquirir el status de corporación de facto, ■ el Tribunal Supremo denegó allí reconocer como tal al 'Supermercado San Juan Inc. --cuya existencia corporativa se defendía bajo la doctrina que contemplamos-- ya que *"[a] la fecha en que se celebró la transacción que dio origen a este pleito ni siquiera se había otorgado el certificado de incorporación, por lo que no había base para asumir la existencia de una corporación de facto "*, Cordero v. Supermercado San Juan, Inc., pág. 786 (énfasis nuestro), hecho que indudablemente fue el factor determinante que inclinó el criterio de dicho foro para así resolver. Fortalece nuestro criterio el comentario de Fletcher a los efectos de que elevar las exigencias al extremo de requerir la radicación del certificado de incorporación conllevaría decir que, *"there is a de jure corporation and not a de facto corporation"*, Fletcher, *supra*, sec. 3761, lo que haría superflua o inoperante la doctrina de la corporación de facto.

Dirigiendo ahora nuestra atención a la situación particular del caso que nos ocupa, las que son claramente distinguibles de los hechos particulares del caso que tuvo allí ante su consideración nuestro Tribunal Supremo, observamos que la Sucesión Echeandía Font, Incorporada cumplió sustancialmente con los requisitos que la hacen acreedora al reconocimiento de su existencia como una corporación de facto en el momento de la transacción que es ahora objeto de impugnación. Así, en el caso de la Sucesión Echeandía Font Incorporada no sólo medió la intención de incorporarse --lo que formó parte de los acuerdos adoptados por el Consejo en su tercera reunión por parte de sus miembros-- sino que dicha parte otorgó su certificado de incorporación debidamente juramentado; emitió acciones de la corporación; y otorgó, utilizando sus poderes corporativos, una escritura de permuta adquiriendo un bien inmueble como parte de sus activos. Así, somos del criterio que tales gestiones satisfacen los requisitos jurisprudenciales antes reseñados que le permiten a este foro reconocer que la Sucesión Echeandía Font Incorporada, para el día 15 de diciembre de 1984, era una corporación de facto. ■ Así, a tenor con la doctrina de corporación de facto, se le reconoce como una *de jure* para todo propósito práctico del estatuto vigente al momento, Ley General de Corporaciones de 1956, *supra*. Refuerza nuestro criterio de que la intención de dicha entidad era la de incorporarse cumpliendo con todos los requisitos de ley el hecho de que el certificado de incorporación de la Sucesión Echeandía Font Incorporada se presentó en el Departamento de Estado el subsiguiente 29 de enero, convirtiéndose, desde ese momento, en una corporación *de jure*. A tenor resolvemos que, al momento en que dicha corporación llevó a cabo el negocio jurídico aquí impugnado --la permuta que fuera recogida en la Escritura Pública Número Ciento Once-- dicha entidad corporativa disfrutaba de la capacidad jurídica requerida por Art. 24 del Código Civil, *supra*, para consentir válidamente en el negocio de permuta de referencia. De igual forma, pues, al disfrutar de existencia con personalidad jurídica, dicha entidad corporativa tenía la facultad de emitir las acciones que se constituyeron en la prestación o causa lícita de dicho contrato por parte de la Sucesión Echeandía Font Incorporada, Art. 1227 del Código Civil, 31 L.P.R.A. sec. 3432, siendo la finca adquirida a cambio el objeto cierto que valida la existencia de aquél. Art. 1213 del Código Civil, *supra*. Al no reconocer la Sucesión Echeandía Font Incorporada como una entidad corporativa de facto en el momento en que se llevó a cabo el negocio jurídico que es objeto de impugnación, y su posterior existencia *de jure* a partir del 29 de enero de 1985, fecha en que se presentó el certificado de incorporación en el Departamento de Estado, el tribunal apelado erró.

Ahora bien, lo anteriormente expuesto no dispone de la controversia de derecho ante nos toda vez que, adicionalmente, el juzgador de hechos estimó que la referida escritura de permuta era nula en virtud de la alegada nulidad de los acuerdos que promovieron la creación de la corporación, ello según *"el artículo 34 de la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987,* ■ *que [indica] que son nulos totalmente los instrumentos públicos que contengan alguna disposición a favor del notario autorizante"*. ■ A tenor, apoyó dicha conclusión en que tal afidávit, el que se suscribió para dejar *"auténtica constancia de lo ocurrido en la tercera reunión",* ■ contenía una cláusula a favor del Lcdo. Ramírez (el acuerdo de pagar sus honorarios en forma de acciones de la referida corporación), notario que dio fe de ello y quien, a su vez, autorizó la escritura impugnada. ■ No obstante reconocer que técnicamente no existía impedimento alguno para que el Lcdo. Ramírez autorizara dicho instrumento público (la escritura de permuta), la sala sentenciadora juzgó que éste era nulo *"aunque se haya usado el subterfugio de distribuir las acciones en un documento aparte..."*. ■ Consideremos la validez de dicha determinación, para lo cual debemos inquirir primeramente sobre la corrección jurídica de declarar nulos los acuerdos adoptados en dicha ocasión, apoyada tal declaración de nulidad en que el documento que recogió los mismos incluia una cláusula a favor del notario, Lcdo. Ramírez.

## -C-

En nuestra jurisdicción, el ejercicio del derecho notarial se rige por la Ley Notarial de Puerto Rico, Ley Núm. 75 de julio de 1987, 4 L.P.R.A. sec. 2001 *et seq.*, y su jurisprudencia interpretativa. Sin embargo, los hechos que generaron los actos cuya validez son objeto de impugnación, acontecieron mientras estaba vigente en Puerto Rico la Ley Núm. 99 de 27 de junio de 1956, estatuto que nada disponía acerca del testimonio o declaración de autenticidad, figura proveniente del notariado latino y que quedara plasmada legislativamente en nuestro derecho notarial a partir de 1987. ▪ Sarah Torres Peralta, *El Derecho Notarial Puertorriqueño,* Publ. STP, Inc., ed. esp., San Juan (1995), pág. 15.1. Es desde ese momento, y a virtud de las disposiciones contenidas en el subcapítulo VII de dicho estatuto --atinentes al *"Testimonio o Declaraciones de Autenticidad "*- que se prescribe la nulidad del documento en que conste una disposición a favor del notario autorizante en una situación como la que media en el caso que nos ocupa. Veamos.

Aunque la actual ley no incluye una definición del 'testimonio o declaración de autenticidad', su Reglamento dispone que *"[e]l testimonio o declaración de autenticidad es la actuación y documento notarial que no va al Protocolo en que el Notario expresa, bajo su fe notarial, sello y firma, sobre la veracidad de un hecho ocurrido ante él o que le conste".* Regla 65, Reglamento Notarial de Puerto Rico de 1995. De otra parte, el Art. 56 del estatuto dispone que aunque *"[s]ólo los notarios podrán dar testimonio de hechos, actos o contratos de mero interés particular [para, entre otros] dar testimonio de la legitimación de las firmas que en él aparezcan [...], no podrán [estos] autorizar testimonios en los casos comprendidos en la sec. 2005 de este título".* 4 L.P.R.A. sec. 2091. Nos remite así dicha sección, en reconocimiento del carácter de documento público del testimonio, a las prohibiciones referentes a instrumentos públicos. En su virtud, y en lo pertinente, la ley notarial ordena que *"[n]ingún notario podrá autorizar instrumentos en el que él intervenga como parte o que contenga disposiciones a su favor",* Art. 5, 4 L.P.R.A. sec. 2005, infracción que acarrea su nulidad, ello según el artículo 34, 4 L.P.R.A. sec. 2052. Así, entre otros, dicha disposición sentencia que *" [s]erán nulos los instrumentos públicos: (1) Que contengan alguna disposición a favor del notario que lo autorice".*

Siendo el instrumento impugnado un documento que satisface la definición dada por el reglamento notarial para un testimonio, el cual se suscribió ante notario para *"que se deje auténtica constancia de lo ocurrido en la tercera reunión del 1ro. y 2do. de diciembre de 1984",* las prohibiciones contempladas en la Ley Notarial de 1987 para tales documentos no pueden alcanzar el mismo y acarrear su nulidad. ▪ A tenor, forzoso resulta decretar la validez de dicho documento, ello en ausencia de una disposición de ley que proscribiera que el Lcdo. Ramírez, a la fecha en que se suscribió el mismo, le impartiera su fe notarial al referido documento que recogió las incidencias de la tercera reunión del Consejo de Familia Echeandía Font. ▪ Consecuencia obligada de tal conclusión es que, si no es nulo el documento, tampoco pueden ser nulos los acuerdos que allí quedaron consignados. Ahora bien, razones adicionales militan a favor de sostener la validez de los mismos.

Claro ha quedado que en nuestra jurisdicción, por ser un documento que hace fe pública, al testimonio o declaración de autenticidad se le ha equiparado -con ese limitado alcance que hemos expuesto- a un instrumento público. ▪ Así, pues, aun si consideráramos que al caso de autos le fuera aplicable la señalada prohibición, la que existía para los instrumentos públicos contemplados en la anterior ley notarial (según indicado, el testimonio o declaración de autenticidad no era uno de ellos porque, sencillamente, dicho documento no se encontraba regulado por ningún estatuto), ▪ de igual forma tendríamos que reconocer la aplicabilidad del artículo 1177 del Código Civil, el cual sostiene que *"[l]a escritura defectuosa, por incompetencia del notario o por otra falta en la forma, tendrá el concepto de documento privado, si estuviese firmada por los otorgantes, 31 L.P.R.A. sec. 3278. Ello lo que significa es que ese documento, notarizado por el único profesional a quien el Estado ha investido con la fe pública, pierde la presunción de veracidad y corrección que dicha fe pública le imparte. In re: Roldán Figueroa, 130 D.P.R. ___ (1992), 92 J.T.S. 8. En su virtud, aun cuando el documento fuera declarado nulo, en función de lo cual se le desviste de la fe notarial que hasta ese momento le acompañaba, tal nulidad no alcanza ni produce el efecto de que resulte nulo su contenido, reputándose vinculante entre las partes comparecientes, ello bajo el concepto que se ha denominado como la teoría de la conversión"* S.J. Credit, Inc. v. Ramírez, 113 D.P.R. 181, 189 (1982); *Sánchez Rodríguez v. López Jiménez,* 116 D.P.R. 172, 188 (1985).

De otra parte, e independientemente del vehículo que en el caso de autos se utilizó para dejar constancia de los acuerdos alcanzados por el Consejo en sus distintas reuniones, en particular la tercera, aquí impugnada, la validez de los mismos se hizo depender única y exclusivamente de que tales acuerdos fueran adoptados en las reuniones convocadas a tales efectos por el Consejo de Familia a las que comparecieran *"por sí o través de y condiciones estipuladas mandatarios el setenticinco (75%) por ciento de las participaciones dejadas"* siempre que mediara el consenso de por lo menos el sesenta por ciento (60%) de la totalidad de las participaciones votando en conjunto, ello según los términos del fideicomiso. Ante esta realidad, forzoso es concluir que las decisiones tomadas por el Consejo no necesitaban constar en documento alguno para reputarse su validez, y que la utilización del 'testimonio de autenticidad' tan sólo perseguía investir los acuerdos allí adoptados con la fe notarial. A tenor, aun si se declarara la nulidad de tal documento (lo que ya hemos determinado que no procede), dicha condición de manera alguna puede alcanzar tales acuerdos -los que vinculan a todos los beneficiarios del Fideicomiso Echeandía Font- como erróneamente concluyera en su sentencia el tribunal apelado. En consecuencia, por este y por los demás fundamentos antes expuestos, le asiste la razón a la apelante en el recurso Núm. KLAN-97-01326 al señalar que incidió dicho foro al sentenciar que *"son nulos los acuerdos que surgen del Acta de la Tercera Reunión del Consejo de Familia Echeandía Font."* ▇

Una vez alcanzada tal conclusión de que no son nulos los acuerdos adoptados por el Consejo en su tercera reunión, como tampoco lo es el documento en que quedaron consignados --ello en ausencia de disposición legal que así lo prescriba--. Veamos ahora el alcance del pronunciamiento del foro de instancia, al declarar nula la escritura de permuta, así como la corrección de su dictamen al decretar la nulidad del negocio jurídico en ésta evidenciado. Según indicado, el juzgador de hechos apoyó su conclusión en que la nulidad dimanaba del interés creado que tenía el Lcdo. Ramírez en que se efectuara el contrato de permuta para así recibir sus honorarios como abogado del fideicomiso *"aunque se halla [sic] usado el subterfugio de distribuir [las mismas] en un documento aparte"*, o sea, en el testimonio o declaración de autenticidad que notarizara el propio Lcdo. Ramírez. Implícito queda que, de su faz, la escritura de permuta no presenta vicio de nulidad alguno.

De un riguroso y estricto análisis de la totalidad de las circunstancias que rodearon las ejecutorias del Lcdo. Ramírez como notario, aquí impugnadas, se hace inevitable concluir, que si bien del documento público cuya validez se cuestiona no surge la prohibición literal que prescribe el estatuto, esta última, la de autorizar la escritura de permuta, apunta hacia los conflictos de intereses que pretendían evitar las disposiciones pertinentes de la ley notarial. Se trata de un instrumento público, una escritura, en cuya otorgación tenía un interés creado toda vez que la misma serviría de vehículo para el pago de sus honorarios como abogado del Fideicomiso Echeandía Font. Vista así tal intervención, a la luz de la totalidad de las circunstancias, aflora un proceder conflictivo con las disposiciones contenidas en la sección 8 del estatuto vigente en ese momento, Ley Notarial de 1956, *supra*, la cual en lo pertinente ordenaba que *"[n]ingún notario podrá autorizar contratos...que contenga[n] disposición en su favor.."*, 4 L.P.R.A. sec. 1008 (1978). ▇

Así, no podemos hacer abstracción de que, independientemente del hecho de que del texto de la Escritura Ciento Once sobre Permuta de Bienes de Igual Valor de 15 de diciembre de 1984 no surge disposición a favor del Lcdo. Ramírez, el obvio interés pecuniario que éste tenía en que se concretara el negocio jurídico recogido en la controvertida escritura se eregía como impedimento para que actuara como el notario ante el cual se otorgó la misma, dándole vida tal impedimento, en las circunstancias que consideramos, al citado estatuto y a la prohibición expresa en él contenida. Se viabilizó en ella que el fiduciario sustituto, Alejandro Charneco, pudiera traspasar la finca conocida como 'finca banco' a favor de la Corporación mencionada, a cambio de 2,978 acciones para, entre otras adjudicaciones, transferir al Lcdo. Juan Jesús Ramírez 297 acciones en satisfacción del 10% pactado por sus servicios profesionales. Fue en consideración a tal realidad que el foro de instancia dictaminó que *"la escritura número Ciento Once autorizada por el notario Lcdo. Juan Jesús Ramírez Rivera sobre Permuta de Bienes de Igual Valor es...nula"*, ello a tenor de la sección 20 de la ley bajo estudio, que declaraba nulos los instrumentos públicos que contuvieran alguna disposición a favor del notario autorizante. 4 L.P.R.A. sec.1020 (1978). Con ese limitado alcance, no erró el foro apelado al así concluir.

Ahora bien, lo anteriormente expuesto no dispone de la controversia que ahora consideramos, ello

por virtud de la aplicación al caso de autos de la teoría de la conversión, concepto legal discutido previamente que le imparte validez a un negocio jurídico recogido èn una escritura defectuosa así declarada, entre otros, por incompetencia del notario o por falta de forma. Art. 1177 del Código Civil, *supra*. A tenor, forzoso es concluir que, presentes los requisitos estipulados en dicho estatuto, el negocio jurídico allí consignado subsiste, considerándose la escritura defectuosa como un documento privado. Toda vez que el documento que nos ocupa está firmado por los otorgantes, requisito impuesto por el Art. 1177, *supra*, y a virtud de lo que hemos resuelto previamente en esta sentencia, de que en dicho negocio concurrieron los elementos que deben estar presentes para que se reconozca la existencia de un contrato -consentimiento, objeto y causa- resolvemos que el negocio de permuta realizado por el fiduciario, Sr. Charneco, como titular del bien inmueble envuelto, y la Sucesión Echeandía Font Incorporada representada por su agente especial, la Sra. Narcisa Rabell Echeandía, subsiste con independencia de la validez, o falta de ella, del documento público donde fue recogido. En consecuencia, el alcance de sostener la nulidad del mismo, como hemos concluido, conlleva exclusivamente la obligación de dichas partes de otorgar una nueva escritura. [56] De igual forma, el controvertido negocio jurídico se reputa válido a los propósitos del cumplimiento de la encomienda del fiduciario, Sr. Charneco, con el mandato contenido en el Fideicomiso Echeandía Font según los acuerdos alcanzados por el Consejo de Familia y los términos de la sentencia que recayera en el caso TS-77-853.

Alcanzada esta determinación, y a tenor con lo hasta aquí resuelto --validez del negocio jurídico de permuta no obstante la nulidad del instrumento público en el que fuera recogido-- resulta insostenible la parte dispositiva de la sentencia apelada que ordena al fiduciario sustituto, Sr. Charneco, otorgar una escritura pública traspasando el 45.19% de la finca objeto de controversia a favor de la estirpe de don Pedro Agustín Getulio Echeandía Font.

### -D-
Finalmente, totalmente improcedente resulta la determinación sumaria alcanzada por el foro de instancia al adjudicar responsabilidad por un alegado proceder negligente de los co-demandados Sr. Charneco y Lcdo. Ramírez *"por la dilación indebida para entregarle su participación hereditaria [a la estirpe de don Pedro Agustín Getulio Echeandía Font]"*. Primeramente, en su moción de sentencia sumaria, la promovente nada alegó ni peticionó al respecto. Segundo, la clara existencia de controversia sobre hechos materiales en cuanto a este extremo hacen totalmente improcedente la utilización de tal vehículo procesal para dilucidar tal causa de acción incluida en la demanda.

Como sabemos, la Regla 36.1 de las de Procedimiento Civil, *supra*, R. 36.1, permite que una parte que trata de obtener un remedio mediante la interposición de una demanda, sujeto a las limitaciones allí impuestas, presente una moción, basada o no en declaraciones juradas, *"para que se dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada"*. A tenor, la Regla 36.3 concede que *"si las alegaciones, [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material"*, como cuestión de derecho *"podrá dictarse sentencia sumaria de naturaleza interlocutoria resolviendo cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes"*. Como bien se ha expresado, el propósito cardinal de dicha disposición es promover una solución justa, rápida y económica en aquellos pleitos en los que, por no estar envuelta una genuina controversia de hechos, se hace innecesaria la celebración de un juicio en su fondo. *González v. Alicea,* 133 D.P.R. ___ (1993), **93 J.T.S. 16**, a la pág. 10380; *Rivera Santana v. Superior Packaging,* 133 D.P.R. ___ (1992), **92 J.T.S. 165,** a la pág. 10165; *Mercado v. U.P.R.*, 128 D.P.R. ___ (1991), **91 J.T.S. 41**, a la pág. 8548. Conforme a estos principios, en el análisis de determinar su procedencia, el juzgador habrá de discernir cuidadosamente al respecto pues, mal utilizada, la sentencia sumaria puede prestarse para despojar a un litigante de su día en corte, principio elemental del debido procedimiento de ley. *Roig Commercial Bank v. Rosario Cirino,* 126 D.P.R. 613, 617 (1990). Es por esta razón que el tribunal debe cerciorarse de la total inexistencia de controversias de hechos y que el residuo sea la aplicación del derecho. *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 D.P.R. 714, 720 (1986); *Consejo de Titulares del Condominio Parkside v. M.G.I.C. Financial Corp.,* 129 D.P.R. ___ (1991), **91 J.T.S. 54,** a la pág. 8668; *Figueroa v. Hernández Torres,* 139 D.P.R. ___ (1991), **91 J.T.S. 54.**

En forma consistente con el cuadro doctrinal antes expuesto, el Tribunal Supremo expresó en

*Corp. Presiding Bishop, supra*, a las págs. 722-723, que al considerar la procedencia de una sentencia sumaria, el tribunal interpelado debe analizar todos los documentos que acompañan ambas mociones, así como todos los que obren en el expediente, *Padín v. Rossi*, 100 D.P.R. 259, 263-264 (1971), y que no deberá dictarse una sentencia sumaria cuando existen hechos materiales controvertidos, cuando haya alegaciones afirmativas en la demanda que han sido refutadas, o cuando de los propios documentos que se acompañan con la moción surge una controversia real sobre algún hecho material; circunstancias todas que apuntan a que, como cuestión de derecho, no procede dictarse sentencia sumariamente. En lo antes expuesto se reiteró, además en *P.F.Z. Props. Inc. v. Gen. Acc. Ins. Co.*, 139 D.P.R.___ (1994), **94 J.T.S. 116,** pág. 125.

Surge así con meridiana claridad de la citada disposición y de su jurisprudencia interpretativa, que la procedencia y el remedio que se solicita en una moción de sentencia sumaria interlocutoria sobre cualquier controversia existente entre las partes litigantes no sólo se hace depender de que el tribunal se convenza de que tal controversia es una genuina de derecho, sino que es obvio que de aquélla sobre la cual nada se ha demostrado, como en el caso de autos donde nada se peticionó en la moción de sentencia sumaria en lo que respecta a la determinación de la responsabilidad por la alegada dilación en la entrega de la participación hereditaria de los demandantes, el foro de instancia carecía de discreción para, *sua sponte*, adjudicar tal extremo sumariamente. Ahora bien, independientemente de lo antes indicado, la improcedencia de la adjudicación de tal extremo se hace manifiesta ante la realidad de que las alegaciones de los demandantes en la demanda dirigida a imputar proceder culposo o negligente a los demandados fueron por éstos negados en sus respectivas contestaciones.

De otra parte e independientemente de lo ya indicado, el fundamento sobre el cual basó la sala sentenciadora su determinación, que *"la estirpe de los herederos aquí demandantes nunca recibió su participación en el haber hereditario"*, es un hecho material que los co-demandados controvirtieron al sostener que el pago de la participación de dicha parte en el Fideicomiso Echeandía Font quedó satisfecho al momento en que se depositó en corte el certificado de acciones emitido a favor de la estirpe de don Pedro Agustín Getulio Echeandía Font, como parte del expediente del caso TS-77-853. Además, la improcedencia de la adjudicación de tal extremo por la vía sumaria lo conceden los demandantes tácitamente al peticionar en la moción de sentencia sumaria por ellos promovida que *"se celebre una vista evidenciaria, a la mayor brevedad, para disponer de las controversias restantes en este caso"*, las que no pueden referirse a otro extremo que no sea aquél atinente a la segunda causa de acción invocada por los demandantes, o sea, aquella mediante la cual se imputa responsabilidad a los demandados por su alegado proceder culposo o negligente y mediante la cual solicita indemnización por los daños resultantes Concluimos así que incidió el foro apelado al disponer en trámite sumario de este asunto, no reconociendo que tal *"controversia real debe ser dilucidada en un juicio "*, Regla 36.3 de Procedimiento Civil, *supra*. Asimismo, y relativo a tal imputación de responsabilidad, la sala sentenciadora hizo abstracción total, además, de las alegaciones hechas por la demandada, de que si los miembros de la estirpe demandante no habían recibido el certificado de acciones de la Sucesión Echeandía Font Incorporada, ello era a consecuencia de su negativa, o de la del mandante de los co-demandantes Consuelo y Getulio Echeandía, Sr. Sella, de cumplir con las disposiciones de 13 L.P.R.A. sec. 5436, *supra*, atinentes al relevo de Hacienda que debe evidenciarse cuando los bienes envueltos provienen de caudales relictos o donaciones, alegaciones afirmativas hechas por la demandada que surgen de los autos, las que no fueron refutadas por la parte promovente de la sentencia sumaria, aquí apelada. A tenor, forzoso resulta concluir que la controversia respecto a la alegada negligencia de los co-demandados es una que deberá ser dilucidada en un juicio plenario, *Roth v. Lugo,* 87 D.P.R. 386, 396 (1963); *Soto v. Hotel Caribe Hilton,* 139 D.P.R. ___ (1994), **94 J.T.S. 128,** pág. 311, y decidida entonces, cuando el juzgador de hechos tenga ante sí la verdad sobre todos los hechos pertinentes. *Tello Rivera v. Eastern Airlines,* 119 D.P.R. 83, 86 (1987).

Por último, y a la luz de lo antes dispuesto, tampoco puede prevalecer el dictamen del foro de instancia mediante el cual le impuso a los demandados-apelantes las costas del proceso y la suma de $3,000.00 de honorarios de abogado por temeridad. Basta con señalar que las costas le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación. Regla 44.1(a) de Procedimiento Civil. Tal determinación en el caso que nos ocupa a la luz de lo aquí resuelto, resulta prematura. De otra parte, tampoco existe base para concluir, en esta etapa de los procedimientos, que resulta procedente la imposición de honorarios de abogado a favor de los

demandantes-apelados. Primeramente, y según ya indicado, los demandantes-apelantes no han prevalecido en la adjudicación final del pleito. En segundo lugar, tampoco existe base para imputar proceder temerario a los demandados-apelantes como fundamento para tal condena. *Santos Bermúdez v. Texaco Puerto Rico, Inc.,* 123 D.P.R. 351 (1989); *Ramírez Anglada v. Club Cala de Palmas,* 123 D.P.R. 339 (1989).

## III

Recapitulando, resolvemos que los acuerdos alcanzados por el Consejo de Familia Echeandía Font en cumplimiento de los términos y condiciones del fideicomiso instituido por don Cecilio Dámaso Echeandía Vélez y doña María Rosalía Marciana Font y Felíu, particularmente los adoptados en su tercera reunión celebrada los días 1ro y 2do de diciembre de 1984, son válidos. A tenor, se reconoce la existencia de la Sucesión Echeandía Font Incorporada y sus actos llevados a cabo de conformidad con tales acuerdos, lo que representa que es válida la emisión de acciones de dicha corporación y el subsiguiente contrato de permuta mediante la cual advino titular del bien inmueble que en su virtud se describe en la Escritura Número Ciento Once autorizada por el Lcdo. Ramírez el 15 de diciembre de 1984. De otra parte, se resuelve que la nulidad de la escritura de permuta notarizada por el Lcdo. Ramírez no tiene el alcance de anular el negocio jurídico en ésta evidenciado. Se procederá ahora con el otorgamiento de una nueva escritura pública, conforme a derecho, que sea bastante para producir todos los efectos jurídicos mediante ella pretendidos.

De otra parte, se dictamina que la causa de acción de los demandantes contra los co-demandados Sr. Charneco y Lcdo. Ramírez por los alegados daños y perjuicios resultantes del alegado proceder culposo y negligente de éstos se dirimirá luego de una vista evidenciaria en la que el tribunal de instancia deberá tomar en consideración lo aquí resuelto así como las demás observaciones apuntadas en la sentencia que hoy emite este foro apelativo. En cuanto a este último extremo resulta apropiado señalar que, en la dilucidación por daños y perjuicios, predicados éstos en la *"alegada usurpación de los derechos titulares"* de los miembros de la estirpe de don Pedro Agustín Getulio Echeandía Font por parte de los co-demandados Sr. Charneco y Lcdo. Ramírez, así como en que éstos han mantenido *"la posesión de facto"* sobre la finca objeto de controversia, , el tribunal de instancia deberá tomar en consideración lo antes dispuesto, y cómo ello incide sobre la responsabilidad del fiduciario en cuanto a la ejecución de su encargo como tal. Ello, a su vez, será visto a la luz de los términos contenidos en el Fideicomiso Echeandía Font y la sentencia dictada en el Caso Núm. TS-77-853. En el proceso, mantendrá presente que la determinación de responsabilidad de dicho fiduciario deberá estar enmarcada dentro de lo que dispone el artículo 862 del Código Civil, o sea, que

*"[e]l fiduciario quedará encargado de la ejecución del fideicomiso desde el instante en que lo acepte, y no será responsable de ninguna equivocación de criterio, de ningún error de hecho o de derecho, ni de ningún acto u omisión, a excepción de su propio descuido voluntario o negligencia manifiesta".* 31 L.P.R.A. sec. 2569.

Finalmente, revocamos y se deja sin efecto el dictamen del foro de instancia mediante el cual le impuso a los demandados-apelantes las costas del proceso y la suma de $3,000.00 por honorarios de abogado por temeridad.

## IV

Por los fundamentos antes expuestos, se dicta sentencia revocatoria de la apelada y se ordena la continuación de los procedimientos en forma armoniosa con lo antes dispuesto.

Lo acuerda y manda el Tribunal y así lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 98 DTA 183**

**1.** La acción de la co-demandante Ida Vélez Méndez fue desistida toda vez que dicha parte aceptó que no tenía derecho alguno sobre los bienes privativos de su esposo, don Pedro Agustín Getulio Echeandía-Font. Véase Replica a moción de desestimación..., Apéndice del recurso Núm. KLAN-97-01326, Parte II, págs. 358-359.

**2.** El Lcdo. Jesús Ramírez Rivera fungió, además, como abogado del Sr, Alejandro Charneco, quien originalmente se desempeñó como administrador judicial de los bienes del Fideicomiso Echeandía Font, pasando luego a ser abogado del Fideicomiso. El licenciado Ramírez es quien apela ante nos de la decisión del tribunal de instancia en el recurso Núm. KLAN -97-01326.

**3.** Según se desprende de los autos, a tal por ciento de participación se llegó luego de las deducciones correspondientes por concepto de honorarios de abogado, compensación al contador partidor, pagos por contribuciones territoriales y otros gastos indispensables de conservación y administración del inmueble.

**4.** Véase Sentencia, Apéndice del recurso Núm. KLAN-97-01317. Parte I, pág. 12.

**5.** *Id.*, a la pág. 13.

**6.** *Id.*

**7.** Asimismo presentó una moción independiente de reconsideración. Ambas mociones de referencia fueron presentadas en la misma fecha, 10 de octubre. En su resolución de 6 de noviembre, el tribunal de instancia sólo hace referencia a la moción presentada al amparo de la Regla 43.3, por lo que la moción de reconsideración debe ser considerada como que fue rechazada de plano.

**8.** Véase Minuta de 4 de diciembre de 1997, Recurso Núm. KLAN-97-01317, Anejo F, pág. 1.

**9.** Dicha escritura fue autorizada por el notario público don Juan Valldejuli Rodríguez. Véase Sentencia del caso TS-77-853, Apéndice del recurso Núm. KLAN-97-01317, pág. 20.

**10.** Véase Sentencia del Caso Núm. TS-77-853, Apéndice de recurso, Parte I, págs. 20-23.

**11.** El tribunal hizo constar en su sentencia que en el pleito así incoado comparecieron representantes de cinco (5) de las ocho (8) líneas sucesorales del matrimonio Echeandía-Font, a saber, 1) María Teresa, representada por su único hijo Luis F. Iturrino Echeandía; 2) Justa Felicidad, representada por sus hijos Oswaldo, Rosalina y Wigbert, de apellidos Brau Echeandía; 3) Juan Francisco por sí mismo, único hijo sobreviviente al momento; 4) Sara María, representada por sus hijas Narcisa, Cecilia y Sara María Rabell Echeandía; y 5) Pedro Antonio, representado por su única hija Ernestina Echeandía Méndez, así como Ramón Joaquín Torres Echeandía y Aida y María Pujols, miembros de la estirpe de María de los Angeles Echeandía, hija natural reconocida por don Cecilio mediante escritura otorgada al respecto en el año 1892. Al momento del pleito, sus hijos Juana Marciana y Cecilio Nicolás Echeandía Font habían muerto sin que les sobreviviera descendencia o ascendencia legal alguna. Cecilio, no obstante, premurió a su madre, doña María Rosalía, por lo que ésta lo heredó. Por último, la estirpe de Pedro Agustín Getulio Echeandía Font, cuyos miembros resultan ser los demandantes y parte de los co-demandados en el pleito que origina los recursos ante nos, no compareció ante el tribunal en dicha ocasión. El debido emplazamiento por edictos de los miembros de dicha estirpe no está en controversia en este pleito.

**12.** Véase Sentencia del caso TS-77-853, Apéndice del recurso Núm. KLAN-97-01317, págs. 19-20.

**13.** Véase Sentencia, Apéndice del recurso Núm. KLAN-97-01317. Parte I, pág. 40. El cumplimiento con dicho requisito y el Status de final y firme de dicha sentencia tampoco está en controversia en este pleito.

**14.** Así, a la pagina 6 de su sentencia, Apéndice del recurso Núm. KLAN-97-01317, pág. 23, la sala sentenciadora estipuló que, entre otras, la siguiente finca formaba parte del *corpus* del Fideicomiso:

"..........

*(B) Finca denominada Culebrinas, inscrita en el Registro de la Propiedad al folio 20, del tomo 19 de San Sebastián, finca número 1170, que tiene un área total de 29.70 cuerdas, más o menos."*

**15.** El por ciento de participación en los haberes del fideicomiso Echeandía-Font, según determinado por dicho foro, no está en controversia.

**16.** En lo pertinente, el tribunal *a quo* determinó que a la estirpe de Don Pedro Agustín Getulio Echeandía, cuyos miembros

en el actual caso son, ambas, partes demandantes y co-demandadas, según expuesto, le correspondía un *"9.5679%, más o menos, en los bienes dejados en Fideicomiso ".*

17. Véase Sentencia del Caso Núm. TS-77-853, Apéndice del recurso Núm. KLAN-97-01317, pág. 33.

18. Según se ha expuesto, María de los Angeles es la hija natural de don Cecilio Dámaso Echeandía Vélez. Su segundo apellido es Santana. Por lo tanto, su participación en los haberes del fideicomiso sólo proviene del interés de su padre.

19. Se corrobora así que el Tribunal Superior, Sala de Aguadilla, reconoció al Fideicomiso Echeandía Font e investió al consejo de familia con autoridad en ley para disponer de, y adjudicar --ello sujeto a sus propios términos y condiciones-- los haberes en los bienes del fideicomiso en satisfacción de la participación de cada uno de sus beneficiarios, toda vez que estas disposiciones fueron acordadas en la primera reunión del Consejo, incorporándolas íntegramente a su sentencia el juzgador de hechos que dirigió los procedimientos en dicho caso. Véase Acta de la reunión de 6 de junio de 1982 del Consejo de Familia Echeandía Font, Apéndice del recurso Núm. KLÁN-97-01317, págs. 101-103.

20. Véase Sentencia, Apéndice del recurso Núm. KLAN-97-01317, págs. 36-40.

21. Véase Escritura Núm. 74 de 13 de marzo de 1983, Apéndice del Recurso Núm. KLAN-97-01317, pág. 104.

22. Así, a doña Ernestina Echeandía Méndez, estirpe de Pedro Antonio, se le traspasó un lote segregado de la finca que allí se describió, conocida como San Bartolomé. A Luis Felipe Iturrino Echeandía, estirpe de María Teresa, se le adjudicó la finca #4328 inscrita a la sección de San Sebastián del Registro de la Propiedad de Aguadilla, de aproximadamente 109 cuerdas, quien satisfaría la diferencia, si alguna, mediante pagaré personal, a Juan Francisco Echeandía Font. A la estirpe de María de los Angeles se le satisfizo en numerario la suma de $57,376.65.

23. Así, a Wigberto, Rosalina y Oswaldo Brau Echeandía, estirpe de Justa Felicidad, y a Narcisa, Cecilia y Sara María Rabell Echeandía, estirpe de Sara María Cristeta, se le satisfizo dicho haber parcial mediante el remanente de la referida finca San Bartolomé. Juan Francisco Echeandía Font recibió en pago parcial la adjudicación de las fincas denominadas Permiterio y Piedras Blancas, allí asimismo descritas.

24. Véase Escritura Núm. 74 de 13 de marzo de 1983, Apéndice del recurso Núm. KLAN-97-01317, págs. 105-113.

25. Esta fecha coincide con el mandato expreso del Fideicomiso de que, dentro de un límite que no excedería de cinco (5) años luego de la muerte de don Pedro Antonio Echeandía Font -fiduciario instituido a virtud de dicho Fideicomiso desde su constitución en el 1921- el Consejo de Familia debía liquidar sus haberes a los descendientes vivos de los fideicomitentes, matrimonio Echeandía-Font.

26. Así, de igual forma se le adjudicó a dicha estirpe una participación de 20.12998 en unos dineros provenientes de la expropiación hecha en la finca denominada San Bartolomé, según se había acordado en la primera reunión del Consejo.

27. Según expuesto, aunque se incluyó a la Sra. Ida Vélez, viuda del causante, como demandante, con posterioridad ésta desistió de su acción. Véase nota al calce Núm. 1.

28. Los demandantes incluyeron a los demás miembros de la estirpe como co-demandados porque alegadamente se habían rehusado a participar en esta acción como demandantes y/o se desconocen [sic] sus paraderos actuales.... Con posterioridad, dos de las co-demandadas, Cecilia Teresa y Carmen Gregoria Echeandía Pérez solicitaron ser incluidas como demandantes, por encontrarse *"en la misma posición de reclamo y remedio que tiene la parte Demandante en este caso".* Véase Moción solicitando..., Apéndice del recurso Núm. KLAN-97-01326, Parte II, pág. 131.

29. Véase Demanda, Apéndice del recurso Núm. KLAN-97-01317, págs. 41-45.

30. La referida sección formaba parte de la hoy derogada Ley de Contribuciones sobre Caudales Relictos y Donaciones de Puerto Rico, Ley Núm. 167 de 30 de junio de 1968. La misma regulaba las actuaciones prohibidas, entre otros, a tribunales, notarios y registradores de la propiedad, en ausencia de que se presentare el correspondiente documento acreditando la cancelación del gravamen impuesto a tenor con las disposiciones de la sección 5431, atinente a bienes del caudal relicto u objeto de donaciones. De otra parte. la sección 6220 de la Ley Núm. 120 de 31 de octubre de 1994, que constituye el Código de Rentas Internas de Puerto Rico de 1994, en lo pertinente dispuso que:

*"Se derogan las Leyes Núm. 91 de 20 [29] de junio de 1954, según enmendada; Núm. 167 de 30 de junio de 1968, según enmendada; y la Ley Núm. 5 de 8 de octubre de 1987, según enmendada, a la fecha de vigencia de este código y toda ley o parte de ley que sea contraria a los dispuesto en este Código queda derogada, con las siguientes disposiciones:*

*(a) Aplicabilidad de las Leyes Anteriores.*

*(1).......*

*(A).......*

*(B).......*

*3. La Ley de Caudales Relictos y Donaciones de Puerto Rico. - Salvo lo que de otro modo se disponga, las disposiciones de la Ley de Caudales Relictos y Donaciones de Puerto Rico se aplicarán a caudales relictos de individuos que fallezcan antes del 1ro. de julio de 1995 y a donaciones efectuadas con anterioridad a dicha fecha."*

**31.** Surge del expediente que la parte demandante presentó una demanda enmendada dieciocho (18) meses más tarde, en la que se ajustó la descripción de la propiedad objeto de controversia a aquella que surge de la Escritura Ciento Once sobre 'Permuta de Bienes de Igual Valor'. En lo demás, sus alegaciones fueron idénticas a las incluidas en la demanda original. Aun cuando surge, además, que el Lcdo. Ramírez contestara dicha demanda enmendada, no encontramos evidencia en el expediente de que el tribunal *a quo* hubiese autorizado dicha demanda enmendada. La contestación a la misma igualmente reproduce los argumentos adelantados en el escrito original.

**32.** Véase Minuta de 14 de noviembre de 1996, Apéndice del recurso Núm. KLAN-97-01326, Parte II, págs. 148-149.

**33.** Véase Moción en cumplimiento de orden..., Apéndice del recurso Núm. KLAN-97-01317, pág. 12.

**34.** Véase Minuta de 2 de octubre de 1997, Apéndice del recurso Núm. KLAN-97-01317, pág. 99.

**35.** Ello según surge de los autos ante nos.

**36.** Ello se hace más significativo ante el incontrovertido hecho que surge de autos de que el poder del Sr. Sella, mandatario de los co-demandantes Consuelo y Getulio Echeandía Font quienes vivían en Brooklyn, New York, le fue otorgado desde el año 1973 para, entre otros, *"[r]eclamar... a través de los Tribunales cualquier derecho hereditario, digo, que tuviesen los poderdantes con relación al caudal relicto de su abuelo, Don Cecilio Echeandía Vélez y su padre, Don Getulio Echeandía Font"*, o sea, desde casi cuatro años antes de que se iniciara el pleito TS77-853 incoado en 1977 sobre 'División de Comunidad de Bienes' que produjera como resultado la referida sentencia en 1984, sin que el mandatario, Sr. Sella, compareciera en el mismo para reclamar los derechos de sus mandantes.

**37.** Véase Sentencia, Apéndice del recurso Núm. KLAN-97-01317, pág. 8.

**38.** Véase Sentencia, Apéndice del recurso Núm. KLAN-97-01317, págs. 8-9.

**39.** Bajo la disposición contenida en el Art. 1.06 de la nueva ley --siguiendo Puerto Rico la tendencia de varias jurisdicciones norteamericanas que han incorporado a su estatuto las disposiciones del Model Business Corporation Act-- entendemos que se da al traste con la figura jurídica que contemplamos toda vez que su inciso (c) sentencia que *"[t]odas las personas que actúen como corporación sin autoridad para ello, serán responsables solidariamente de todas las deudas y obligaciones incurridas o asumidas como resultado de esta actuación"*, 14 L.P.R.A. sec. 2606(c), (Supl. 1997), ello luego de enumerar los requisitos de estricto cumplimiento que deben estar presentes para que se reconozca el nacimiento de la corporación a la vida jurídica. Véase al respecto 8 *Fletcher Cyc. Corp.;* Sec. 3762.1 (1982).

**40.** En este caso, además, cuando la alegada 'corporación de facto' intervino en la transacción por la cual se quiso responsabilizar a sus miembros personalmente, el Tribunal Supremo observó que en la escritura se estipulaba, no obstante los socio indicar que *"vienen operando como una corporación de facto pendiente la creación definitiva de dicha entidad manifiestan sin embargo que adquieren el negocio en cuestión en proporción de partes iguales para cada uno de los tres comparecientes compradores...". Cordero v. Supermercado San Juan, Inc., supra,* pág. 785.

**41.** Ballantine, *Ballantine on Corporations* 524, Callaghan and Company, Chicago (1946), pág. 77.

**42.** Estos últimos requisitos no surgen de las disposiciones previamente citadas por el alto foro postuladas por Fletcher, *supra*, o por Ballantine, *supra*. De hecho, Fletcher postula que exigir un cumplimiento tan sustancial como el que representaría cumplir con tales requisitos conllevaría decir que, *"there is a de jure corporation and not a de facto corporation"*, Fletcher, *supra*, sec. 3761, lo que haría superflua o inoperante la doctrina de la corporación de facto.

**43.** Así, a tenor con la doctrina de corporación de facto, se le reconoce como una de jure para todo propósito práctico del estatuto vigente al momento, Ley General de Corporaciones de 1956, *supra*.

**44.** Esta no era la ley vigente en el momento en que sucedieron los hechos impugnados.

**45.** Véase Sentencia, Apéndice del recurso Núm. KLAN-97-01317, pág. 10.

**46.** Véase Acta de la tercera reunión, Apéndice del recurso Núm. KLAN-97-01317, pág. 118.

**47.** Según se ha indicado, la demandante postuló que el Lcdo. Ramírez tenía un interés creado en que se llevara a cabo ese negocio porque de él dependía el pago de sus honorarios como abogado del Fideicomiso Echeandía Font.

**48.** Véase Sentencia, Apéndice del recurso Núm. KLAN-97-01317, pág. 10.

**49.** 4 L.P.R.A. secs. 2091-2095.

**50.** A igual conclusión llegaríamos si se considerara que el documento en cuestión fuera un afidávit, documento no protocolado de origen puramente anglosajón cuya regulación no es parte de nuestra ley notarial, habiendo optado la Asamblea Legislativa por retener la reglamentación aprobada desde principios de siglo sin incorporarla a dicho estatuto. Sarah Torres Peralta, *supra*, pág. 15.1 La misma consiste de los artículos 1. 2, 3, 4, y 5 de la Ley de 12 de marzo de 1903, 4 L.P.R.A. secs. 881-885; sección 1 de la Ley de 8 de marzo de 1906, 4 L.P.R.A. sec. 886, y secciones 1, 3, 4, 6, 6A y 8 de la Ley de 12 de marzo de 1908, según enmendadas, 4 L.P.R.A. sec. 887, 889, 892, 892a y 894. De acuerdo a dicha tratadista, los conceptos de 'testimonio o declaración de autenticidad' del derecho notarial latino y el de 'afidávit' proveniente del anglosajón, son análogos, y jurisprudencialmente han recibido el mismo tratamiento en cuanto a sus características y alcance. *Id.*, pág. 15.10, nota al calce 29. Para una excelente exposición al respecto, referimos al lector a la citada obra de la Prof. Torres Peralta.

**51.** De otra parte, debemos observar que, al incorporarse las disposiciones pertinentes al testimonio o declaración de autenticidad a la Ley Notarial de 1987, ninguna salvedad se hizo respecto a la aplicación retroactiva de las mismas. Así, cobra virtualidad el Art. 3 de nuestro Código Civil, que en lo pertinente apunta que en nuestra jurisdicción las leyes son de efecto prospectivo, *"si no dispusieren expresamente lo contrario"*. 31 L.P.R.A. sec. 3.

**52.** A tenor, un testimonio o declaración de autenticidad no tiene, por sí mismo, acceso al Registro de la Propiedad excepto en los casos que así lo dispone la ley.

**53.** La anterior ley notarial sólo hace referencia a las escrituras como instrumentos públicos.

**54.** Véase Sentencia, Apéndice del recurso Núm. KLAN-97-01317, pág. 12.

**55.** Según se ha expuesto, la actual ley contiene una disposición similar en su artículo 5, 4 L.P.R.A. sec. 2005, pero con un alcance más amplio: *"[n]ingún notario podrá autorizar **instrumentos**...que contenga[n] disposiciones a su favor]."* (Enfasis nuestro).

**56.** Para que dicho instrumento público produzca todas las consecuencias jurídicas a las que iba dirigido y logre acceso al Registro de la Propiedad, deberá estar acompañado de una resolución corporativa de la Sucesión Echeandía Font Incorporada acreditando la autoridad del compareciente que otorgará dicha escritura por parte de dicha corporación. Del expediente no surge que para la escritura que hoy declaramos nula existiera tal resolución.

**57.** Véase Réplica a Solicitud de Sentencia Sumaria... y Certificado de acciones..., Apéndice del recurso Núm. KLAN-97-01317. págs. 81 y 126, respectivamente. Asimismo, entendemos que la controversia levantada de si la cantidad de acciones adjudicadas corresponde al haber de la referida estirpe o si representa una lesión a su participación hereditaria, es una cuestión que deberá dirimir el foro apelado mediante alegaciones adecuadas a tales efectos y la consideración de los documentos que obran en el expediente del caso TS-77-853, lo que parece ser que no hizo al tomar su determinación de

dictar sentencia sumaria a favor de la demandante.

58. *Id.*, pág. 74.